UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| AAMAIYAH VAUGHAN and GLADYS TAVERAS, on behalf of themselves, individually, and on behalf of all others similarly-situated,<br><br>       Plaintiffs,<br><br> -against-<br><br>LEARNING CARE GROUP, INC. and EVERBROOK ACADEMY, LLC, and any other related entities and/or individuals,<br><br>       Defendants. | **COMPLAINT**<br><br>**Docket No.:** 24-cv-7634<br><br>Jury Trial Demanded |

AAMAIYAH VAUGHAN and GLADYS TAVERAS (collectively, "Plaintiffs"), on behalf of themselves, individually, and on behalf of all others similarly situated, as class representatives except where otherwise stated, by and through their attorneys, BORRELLI & ASSOCIATES, P.L.L.C., as and for his Complaint against LEARNING CARE GROUP, INC. ("LCG") and EVERBROOK ACADEMY, LLC ("Everbrook") (collectively, "Defendants"), allege upon knowledge as to themselves and their own actions and upon information and belief as to all other matters as follows:

## NATURE OF THE CASE

1. This is a civil action seeking monetary damages and other redress based upon Defendants' violations of Plaintiffs' rights guaranteed to them by: (i) the New York Labor Law ("NYLL")'s requirement that employers pay wages to their employees who perform manual labor not less frequently than on a weekly basis, NYLL § 191(1)(a); (ii) the NYLL's requirement that employers furnish employees with a wage statement containing specific categories of accurate information on each payday, NYLL § 195(3); (iii) the NYLL's prohibition on retaliation against any

employee who "discloses, or threatens to disclose to a supervisor or to a public body an activity, policy or practice of the employer that the employee reasonably believes is in violation of law, rule or regulation or that the employee reasonably believes poses a substantial and specific danger to the public health or safety," NYLL § 740; and (iv) any other individual and/or class cause(s) of action that can be inferred from the facts set forth herein.

2. Plaintiff Vaughan worked for Defendants - - two Michigan businesses authorized to do business in New York, which together operate a chain of early learning centers - - as a head teacher at Everbrook Academy location in Glen Head, New York from August 2022 until October 31, 2022.

3. Plaintiff Taveras worked for Defendants as an assistant teacher, also at Defendants' Everbrook Academy location in Glen Head, New York from June 27, 2022 through November 4, 2022.

4. At all times during the course of their employment, the Defendants required Plaintiffs to perform manual labor for at least 25% of their duties, including, but not limited to, changing diapers, serving and cleaning up food and bottles, cleaning and preparing the classroom, and dressing and undressing babies and toddlers.

5. As described below, for the duration of their employment and for at least the six-year period pre-dating the commencement of this action, plus an additional 228 days pursuant to Governor Andrew M. Cuomo's executive tolling orders ("the Relevant Period"), Defendants unlawfully failed to pay Plaintiffs and all other similarly situated employees whose duties required them to perform manual labor for at least 25% of their work, all of their earned wages on at least as frequently as a weekly basis, and instead paid them every two weeks, in violation of Section 191(1)(a) of the NYLL.

6. At all relevant times, Defendants have compensated Plaintiffs and all other workers whose duties required them to perform manual labor for at least 25% of their work ("Manual Workers") in New York on a bi-weekly basis, and as such Defendants have failed to provide timely and proper wages to Plaintiffs and all other Manual Workers in New York.

7. Defendants further violated the NYLL, Section 740, with respect to Plaintiffs Vaughan and Taveras, individually, by terminating their employment mere days after they engaged in protected activity by reporting serious violations of 18 New York Codes, Rules and Regulations ("NYCRR") § 418-1.8 concerning children's safety, first internally, and then with the New York State Office of Children and Family Services ("OCFS").

8. Plaintiffs bring this action on behalf of themselves and all other similarly situated Manual Workers in New York ("Class"), except where claims being pursued individually are otherwise noted, pursuant to Federal Rule of Civil Procedure 23 ("Rule 23") to remedy violations of the New York Labor Law, Article 6, §§ 190 *et seq.* ("NYLL").

## JURISDICTION AND VENUE

9. This Court has original jurisdiction pursuant to the Class Action Fairness Act of 2005 ("CAFA"), codified at 28 U.S.C. § 1332(d), because the amount in controversy against the Defendants in this matter exceeds the sum or value of $5,000,000, exclusive of interest and costs, and Plaintiffs and the members of the proposed class are citizens of states different from that of Defendants.

10. Based on the estimated class size, and the nature of the damages arising from the claims alleged[1], the amount in controversy against the Defendant in this matter exceeds the sum

---

[1] Damages for a New York Labor Law §191 frequency of pay claim are "effectively, 100% of all wages that were not paid on time." *Ramirez v. Urion Constr. LLC*, No. 22 CIV. 3342 (LGS), 2023 WL 3570639, at *7 (S.D.N.Y. May 19, 2023); NYLL § 198 1-b ("damages of fifty dollars for each work day that the violations occurred or continue to occur, but not to exceed a total of five thousand dollars"); NYLL § 198 1-d ( "damages of two hundred fifty dollars for each work day that the violations occurred or continue to occur, but not to exceed a total of five thousand dollars.").

or value of $5,000,000, to be further explained below.

11. This Court has supplemental jurisdiction over Plaintiff Vaughan and Taveras' individual NYLL § 740 claims pursuant to 28 U.S.C. § 1367.

12. Defendants are subject to personal jurisdiction in New York because they avail themselves of the benefits of doing business in New York by operating numerous child care centers in the state, including Everbrook Academy in Glen Head, New York where Plaintiffs worked.

13. Venue is proper in the Eastern District of New York pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this District, and Defendants conduct business in this District.

## PARTIES

14. At all times during the Relevant Period, Plaintiffs, both residents of New York, were "employees" entitled to protection as defined by the NYLL, as they worked for Defendants in Glen Head, New York.

15. Plaintiffs are domiciled in and are citizens of New York State.

16. Plaintiffs are further registered to vote in New York, pay New York State taxes, and have New York State ID's and driver's licenses.

17. Plaintiffs are covered employees within the meaning of the NYLL.

18. Defendant LCG is a Michigan Limited Liability Corporation with its principal executive office in Novi, Michigan, US and registered to do business in New York.

19. Defendant LCG's principal executive office is located at 21333 Haggerty Rd., Suite 300, Novi, Michigan 48375.

20. Defendant Everbrook is a Michigan Limited Liability Company and a subsidiary of Defendant LCG, with its principal executive office in Novi, Michigan, US and registered to do business in New York.

21.     Defendant Everbrook's principal executive office is located at 21333 Haggerty Rd., Suite 300, Novi, Michigan 48375.

22.     Defendants were and are covered employers within the meaning of the NYLL, and at all times relevant, employed Plaintiffs and similarly situated employees.

23.     Defendants have maintained control, oversight, and direction over Plaintiffs and similar employees, including timekeeping, payroll, and other employment practices that applied to them.

24.     Defendants apply the same employment policies, practices, and procedures to all Manual Workers in their operations, including policies, practices, and procedures with respect to payment of wages.

## CLASS ACTION ALLEGATIONS

25.     Plaintiffs bring the Causes of Action, NYLL § 191 and NYCRR claims, under Rule 23 of the Federal Rules of Civil Procedure, on behalf of themselves and a class of persons consisting of:

> All persons who work or have worked as Manual Workers for Defendants, including but not limited to head daycare teachers, assistant daycare teachers, floaters, and janitorial and maintenance staff, between March 17, 2018[2] and the date of final judgment in this matter (the "New York Class").

26.     The members of the New York Class are so numerous that joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court.

27.     There are more than 500 members of the New York Class.

28.     Plaintiffs' claims are typical of those claims that could be alleged by any member of the New York Class, and the relief sought is typical of the relief which would be sought by each

---

[2] *Brash v. Richards*, 195 A.D.3d 582 (2d Dep't 2021) (holding executive order tolled rather than suspended statutes of limitations under New York law).

member of the New York Class in separate actions.

29. Plaintiffs and the New York Class have all been injured in that they have been uncompensated, under-compensated, or untimely compensated due to Defendants' common policies, practices, and patterns of conduct. Defendants' corporate-wide policies and practices affected everyone in the New York Class similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each member of the New York Class.

30. Plaintiffs are able to fairly and adequately protect the interests of the New York Class and have no interests antagonistic to the New York Class.

31. Plaintiffs are represented by attorneys who are experienced and competent in both class action litigation and employment litigation and have previously represented many plaintiffs and classes in wage and hour cases.

32. A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants. Class action treatment will permit a large number of similar persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender.

33. Common questions of law and fact exist as to the New York Class that predominate over any questions only affecting Plaintiffs and/or each member of the New York Class individually and include, but are not limited to, the following: whether Defendants correctly compensated Plaintiffs and the New York Class on a timely basis and whether Defendant furnished and furnish the Plaintiffs and the New York Class with an accurate wage statement on each payday that contains the information that NYLL § 195(3) requires.

## BACKGROUND FACTS

34. Defendant LCG is a large corporation that operates numerous for-profit childcare centers in New York and throughout the United States under multiple brand names, including as is relevant the Everbrook Academy chain for which Plaintiffs worked, as well as the Child Time and Tutor Time brands. According to LCG's website, LCG operates 57 childcare centers in the State of New York.

35. LCG sets narrow ranges of pay for each position, operates the payroll and sets the frequency of pay for employees of all LCG childcare centers in New York.

36. LCG's website includes a list of open positions, the qualifications for each position, and an online application for all LCG childcare centers in New York and nationwide.

37. Defendant Everbrook is a subsidiary brand of LCG that jointly with LCG employed Plaintiffs and continues to employee members of the New York Class.

38. Plaintiff Vaughan worked for Defendants as a head teacher at Defendants' Everbrook Academy in Glen Head, New York, from approximately August 2022 until Defendants terminated her employment on October 31, 2022.

39. Plaintiff Taveras worked for Defendants at the same school as an assistant teacher in Plaintiff Vaughan's classroom from June 27, 2022 until Defendants terminated her employment on November 4, 2022.

40. Defendants paid Plaintiff Vaughan approximately $18 per hour throughout her employment.

41. Defendants paid Plaintiff Taveras approximately $19 per hour throughout her employment.

42. Throughout their employment, Plaintiffs spent more than twenty-five percent of their time performing manual tasks, including, but not limited to, changing diapers, serving and cleaning

up food and bottles, cleaning and preparing the classroom, and dressing and undressing babies and toddlers. Yet Defendants paid them and similarly situated employees, and continue to pay similarly situated employees, on a biweekly basis.

43. Defendants provided Plaintiffs with paystubs that failed to list the hours worked per week, did not include their hourly rate or overtime rate, and did not include the start and end date of the pay period. This harmed Plaintiffs by depriving them of the ability to verify that they were being paid for all hours worked each week and were receiving time-and-one-half for all hours worked over forty in a single work week, as required by state and federal law.

44. For example, for the week beginning on September 26, 2022 and ending on September 30, 2022, Defendants paid Plaintiffs their lawfully earned wages on October 10, 2022. *See* **Exhibit A**, Vaughan's Paystub.

45. Defendants failed to pay Plaintiffs wages earned from September 26, 2022 through September 30, 2022 by October 3, 2022, as required by NYLL § 191(1)(a).

46. As a result of Defendants' untimely wage payments, Plaintiffs were underpaid for the first seven days of each bi-weekly pay period, and thus Defendants paid Plaintiffs on an untimely basis.

47. As such, Plaintiffs were denied the time-value of their money by Defendants' underpayments. Plaintiffs were unable to invest, save, or purchase goods utilizing the wages they earned and were owed but were paid late (unpaid).

48. Plaintiffs were similarly underpaid for every workweek that they were paid their lawfully earned wages after more than seven days within the time they completed their work.

49. On each occasion when Defendants paid Plaintiffs, Defendants failed to furnish Plaintiffs with a proper wage statement that accurately listed, *inter alia*, the dates of work covered by that payment of wages, their actual hours worked, their overtime rate, and their overtime wages owed. Defendants' failure to provide Plaintiffs with a proper wage statement deprived Plaintiffs of

the ability to know exactly how much compensation they were entitled to and contributed to the underpayment of wages as asserted herein.

50. Throughout their employment, Plaintiffs observed approximately 25-30 employees employed to perform similar manual tasks each day at their location, which is one of 57 childcare centers Defendant LCG operates in the State of New York. Plaintiffs also observed frequent turnover among the staff.

51. Pursuant to NYLL § 191(1)(a) all those employees are and were similarly paid on a bi-weekly basis and as a result, are and were underpaid for the first seven days of each bi-weekly pay period, and as a result, are and were paid on an untimely basis. As a result, all potential Class members are and were underpaid for the first seven days of each bi-weekly pay period, and are owed 100% of those late wages as damages. *Ramirez* 2023 WL 3570639, at *7.

52. Pursuant to NYLL § 198 1-b and NYLL § 198 1-d, each Class Member would be owed $5,000.00 for their NYLL § 195(3) claims. With an assumed Class size of over 500, the WTPA penalties alone would reach or exceed the $5,000,000 amount in controversy requirement.

53. Therefore, based on the foregoing, the amount in controversy far exceeds the over $5,000,000 amount in controversy requirement.

54. During the month prior to their termination, Plaintiffs, on numerous occasions, alerted their superiors, including Principal Mary Earvolino and Education Manager Carol Hernandez, who like Plaintiffs were jointly employed by LCG and Everbrook, about serious violations of 18 New York Codes, Rules and Regulations ("NYCRR") § 418-1.8 affecting the children's safety.

55. For example, during a staff meeting on October 10, 2022, Plaintiff Vaughan reported to Earvolino, Hernandez and other employees that she was left alone with more children than she was legally allowed to supervise during the week of October 3, 2022, including a child from another

9

class with dietary restrictions of which Plaintiff Vaughan was not made aware, and that as a result, said child ate a food she was restricted from eating.

56. On October 11, 2022, Earvolino called Plaintiff Vaughan into a meeting with herself and Hernandez, during which Earvolino and Hernandez accused Plaintiff Vaughan of lying about the ratio violation and complained that Plaintiff Vaughan's assertion at the staff meeting the previous day "made them look bad."

57. On October 21, 2022, Plaintiff Taveras' daughter, who was a student in another classroom at Everbrook's Glen Head location, went unaccounted for and was ultimately located inside a closet in the classroom. Plaintiff Taveras complained internally *via* e-mail to Earvolino and Hernandez and reported the incident to the New York Office of Children and Family Services ("OCFS") the same day.

58. On October 31, 2022, after multiple unsuccessful attempts to report these and other violations internally, Plaintiffs Vaughan and Taveras separately contacted OCFS and reported multiple violations that seriously compromised the safety of the children in Defendants' care, including but not limited to the incidents described above, as well as an incident in which a child was left alone on the playground without supervision and the physically rough and verbally abusive treatment of a special needs child by a teacher.

59. Defendants terminated Plaintiff Vaughan's employment on October 31, 2022, hours after she contacted OCFS.

60. Five days later, on November 4, 2022, Defendants terminated Plaintiff Taveras' employment.

**FIRST CAUSE OF ACTION**
**New York Labor Law – Failure to Pay Timely Wages**
(Brought on behalf of Plaintiffs and the New York Class)

61. Plaintiffs reallege and incorporate by reference all allegations in all preceding

paragraphs.

62. The timely payment of wages provisions NYLL § 191 and its supporting regulations apply to Defendants and protect Plaintiffs and the New York Class.

63. Defendants failed to pay Plaintiffs and the New York Class on a timely basis as required by NYLL § 191(1)(a), which resulted in Plaintiffs and the New York Class being underpaid.

64. Due to Defendant's violations of the NYLL, Plaintiffs and the New York Class are entitled to recover from Defendant the amount of the underpayments caused by their untimely wage payments as liquidated damages, reasonable attorneys' fees and costs, and pre-judgment and post-judgment interest as provided for by NYLL § 198.

## SECOND CAUSE OF ACTION
**New York Labor Law – Failure to Furnish Accurate Wage Statements**
(Brought on behalf of Plaintiff and the New York Class)

65. Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

66. NYLL § 195(3) requires that employers furnish employees with a wage statement that contains accurate, specifically enumerated criteria on each occasion when the employer pays wages to the employee.

67. As described above, Defendants, on each payday, failed to furnish Plaintiffs and the New York Class with a wage statement that accurately contained the criteria that the NYLL requires.

68. Due to Defendant's violations of the NYLL, Plaintiff and the New York Class are entitled to recover from Defendant the amount of $250.00 for each workday that the violation occurred, up to a statutory cap of $5,000.00 per person

## THIRD CAUSE OF ACTION
**New York Labor Law – Retaliation for Protected Whistleblower Activity**
(Brought on behalf of Plaintiffs Individually)

69. Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

70. NYLL § 740 prohibits employers from taking any retaliatory action against an employee because said employee "discloses, or threatens to disclose to a supervisor or to a public body an activity, policy or practice of the employer that the employee reasonably believes is in violation of law, rule or regulation or that the employee reasonably believes poses a substantial and specific danger to the public health or safety."

71. By reporting serious violations of 18 New York Codes, Rules and Regulations ("NYCRR") § 418-1.8 concerning children's safety, first internally, and then with the New York State Office of Children and Family Services ("OCFS"), Plaintiffs engaged in activity that was clearly protected by NYLL § 740.

72. Plaintiffs reasonably believed the issues they reported posed a substantial and specific danger to the public health or safety, specifically the safety of the children in Defendants' care.

73. By disregarding Plaintiffs' concerns, attempting to cast blame on Plaintiffs for the violations, and terminating Plaintiffs' employment in close temporal proximity to Plaintiffs reporting Defendants' violations to OCFS, Defendants violated NYLL § 740.

74. Due to Defendant's violations of NYLL § 740, Plaintiffs are entitled to recover from Defendants compensatory and punitive damages, statutory penalties not to exceed $10,000 each, plus reasonable attorneys' fees and costs, and pre-judgment and post-judgment interest as provided for by NYLL § 198.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs, individually, and on behalf of all other similar persons, respectfully request that this Court grant the following relief:

A. Certification of this case as a class action pursuant to Rule 23 of the Federal Rule of Civil Procedure;

B. Designation of Plaintiffs as representatives of the New York Rule 23 Class and counsel of record as Class Counsel;

C. Liquidated damages permitted by law pursuant to the NYLL;

D. Compensatory and punitive damages pursuant to NYLL § 740;

E. Prejudgment and post-judgment interest;

F. Reasonable attorneys' fees and costs of the action;

G. Injunctive relief enjoining Defendants from continuing their unlawful practices; and

H. Such other relief as this Court shall deem just and proper.

Dated: Garden City, New York
       October 31, 2024

                                    Respectfully submitted,

                                    _____
                                    Lauren R. Reznick, Esq.
                                    Michael J. Borrelli, Esq.

                                    BORRELLI & ASSOCIATES, P.L.L.C.
                                    *Attorneys for Plaintiff and the Putative Class*
                                    910 Franklin Avenue, Suite 205
                                    Garden City, New York 11530
                                    Tel. (516) 248-5550
                                    Fax. (516) 248-6027